IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| ULISES RAMIREZ CRUZ, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>KEVIN J. SCHNEIDER, Polk County )<br>Sheriff; PETER BERG, Director, United )<br>States Immigration and Customs )<br>Enforcement St. Paul Field Office; TODD )<br>M. LYONS, Acting Director, United )<br>States Immigration and Customs )<br>Enforcement; KRISTI NOEM, Secretary, )<br>United States Department of Homeland )<br>Security; PAMELA BONDI, Attorney )<br>General of the United States; DONALD )<br>J. TRUMP, President of the United )<br>States, in their official capacities, )<br>)<br>Respondents. )<br>)<br>) | Case No. 4:25-CV-478<br><br>**PETITION FOR WRIT<br>OF HABEAS CORPUS** |

## INTRODUCTION

1.      Ulises Ramirez Cruz (Mr. Ramirez) was arrested by Immigration and Customs Enforcement (ICE) in Des Moines, Iowa.  ICE officers were conducting surveillance on an approved field operation warrant at a residential address.  ICE observed Mr. Ramirez exit his house and enter his vehicle.  A traffic stop ensued, and Mr. Ramirez was arrested and processed as a "WA/NTA," or Warrant of Arrest/Notice to Appear.  Ex. 1 I-213.  He has been detained since November 7, 2025—separated from his fiancée, their family, and friends. Mr. Ramirez has lived in Iowa for around five years and poses no danger to the public.

2. Mr. Ramirez requested a bond redetermination hearing in front of an IJ in Omaha, NE, but the IJ refused to hold a bond hearing. The IJ found that she lacked jurisdiction to hold a bond hearing pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). See Exhibit 2. Notably, she made this finding prior to the nationwide Bond Eligible Class certification and partial order for summary judgment in *Lazaro Maldonado Bauutista, et al. v. Ernesto Santacruz Jr., et al.* 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 25, 2025) at Dkt. No. 41, 42, Ex. 3.

3. Mr. Ramirez now languishes in custody for the duration of the bond appeal, or even longer, despite qualifying for a bond redetermination hearing in immigration court. As applied to this case, the IJ's decision finding no jurisdiction for a bond redetermination hearing is an unconstitutional denial of Mr. Ramirez's liberty.

4. Mr. Ramirez seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging his unlawful detention. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301, 121 S. Ct. 2271, 2280 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

5. He respectfully requests that the Court find his detention unlawful and unconstitutional and issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to immediately release him from custody. Alternatively, the Petitioner requests that this Court order Respondents to provide him with a bond

redetermination hearing. He respectfully requests the Court order Respondents to show cause why this Petition should not be granted within three days.

## CUSTODY

6. Mr. Ramirez is in the physical custody of Respondents. He is under the direct control of Respondents and their agents. He is currently detained in the Polk County Jail in Des Moines, IA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331.

8. Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because Mr. Ramirez is confined in this District, at least one Respondent is in this District, Mr. Ramirez's immediate physical custodian is in this District, and a substantial part of the events giving rise to the claims in this action occurred in this District. *See Trump v. J. G. G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam) ("For core habeas petitions, jurisdiction lies in only one district: the district of confinement" (internal quotation marks and citation omitted)).

## HABEAS CORPUS

9. A petitioner is entitled to habeas relief if he demonstrates that his detention violates the United States Constitution or federal law. 28 U.S.C. § 2241.

10. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 20 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return

"within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

11. The Court has inherent power to release the petitioner pending review of his petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

## PARTIES

12. Mr. Ramirez is currently in the custody of the Polk County Jail in Des Moines, IA. Respondent Kevin J. Schneider is the Polk County Sheriff and has physical and administrative custody over Mr. Ramirez. He is named in his official capacity. Although Mr. Ramirez is in physical custody in Polk County, he is detained by ICE and has been in ICE custody since November 7, 2025.

13. Respondent Peter Berg is the Director of the ICE St. Paul Field Office. He is a legal custodian of Mr. Ramirez and is named in his official capacity.

14. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Mr. Ramirez and is named in his official capacity.

15. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Mr. Ramirez and is named in her official capacity.

16. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Mr. Ramirez and is named in her official capacity.

17. Respondent Donald J. Trump is the President of the United States. He is a legal custodian of Mr. Ramirez and is named in his official capacity.

## FACTUAL ALLEGATIONS

### A. Background

18. Mr. Ramirez has lived in Iowa for around five years. He was born in Mexico but is believed to have left the country in 2020 or 2021. Mr. Ramirez has maintained gainful employment, and contributed to the Iowa community.

19. Mr. Ramirez has significant ties to the community, including his fiancée and her family, and several cousins. He is active in his church. Several friends and family members submitted letters of support in anticipation of his bond hearing. Ex. 4 Bond Exhibits.

20. Mr. Ramirez was arrested by ICE on November 7, 2025 pursuant to a Field Operation Warrant. He has been in the Polk County Jail since November 7, 2025 in ICE custody. He has no criminal history.

21. On November 19, 2025 Mr. Ramirez requested a bond redetermination hearing in front of an IJ. See, Motion for Bond Redetermination, Ex. 5. This request was denied with the IJ finding no jurisdiction to hold the bond hearing based on the BIA case of *Matter of Yajure Hurtado*.

22. Mr. Ramirez intends to file an appeal of the IJ's decision with the Board of Immigration Appeals, a process that could take months if not a year.

### B. Detention and Bond Hearing

23. Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision. *See* 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs. 8 C.F.R.

§§ 1003.19, 1236.1. The discretionary detention provision, 8 U.S.C. § 1226(a), applies only to noncitizens without serious criminal convictions. It contrasts with the mandatory detention provision, 8 U.S.C. § 1226(c), which applies to noncitizens convicted of certain criminal offenses or involved in terrorist activities and requires continued detention.

24. Because Mr. Ramirez was found within the United States, he was arrested and detained under Section 1226(a).

25. When a noncitizen is detained under Section 1226(a), DHS makes the initial custody determination, but the detainee can request reconsideration by an IJ. Here, DHS initially detained Mr. Ramirez without bond. He then requested a bond redetermination hearing in front of an IJ.

26. At the bond redetermination hearing on November 20, 2025, Mr. Ramirez submitted evidence and argued that he was eligible for a bond and showed strong ties to the community and potential for relief in immigration court. DHS argued for the that Mr. Ramirez is subject to mandatory detention under a different provision, 8 U.S.C. § 1225(b)(2)(A), which governs the inspection process for noncitizen "applicants for admission"—new arrivals to the country.

27. The IJ sided with DHS's argument that she did not have jurisdiction to conduct a bond redetermination hearing.

28. Mr. Ramirez remains in DHS custody without the opportunity for release.

**LEGAL FRAMEWORK**

29. The Due Process Clause of the Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S. Const. amend. V. These substantive and procedural due process protections apply to all people, including noncitizens. *Trump v. J.G.G.*, 604 U. S. ---145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439 (1993)). The IJ's refusal to hold a bond redetermination hearing for Mr. Ramirez violates his substantive and procedural rights to due process.

### A. Substantive Due Process

30. The Due Process Clause provides heightened protection against government interference with certain fundamental rights—and freedom from detention lies at the heart of the Due Process Clause's protections. Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, (2001).

31. But in Mr. Ramirez's case, DHS failed to present any evidence that he was a danger to the community or he was a flight risk, just argument that he not eligible for a bond hearing.

32. The government has no special or compelling justification to continue detaining Ramirez, and certainly not an interest that outweighs Ramirez's interest in avoiding government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The regulation, which permits unilateral government detention of individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that any 'special justification' exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail.").

33. The government's decision to not hold a bond redetermination hearing and continued detention of Ramirez violated his substantive due process rights.

### B. Procedural Due Process

34. Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Ramirez received no such opportunity: he had no bond redetermination hearing

35. To determine whether government conduct violates procedural due process, the Court weighs three factors: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced

by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Id.* at 335.

### *Private Interest*

36. Ramirez's private interest is the right to be free from government detention. This interest is of the highest constitutional import.

37. Ramirez's conditions of detention further tip this factor in his favor. *See Günaydın v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D. Minn. May 21, 2025). He is in custody away from his family, including his fiancée, family, and friends.

38. Despite being in custody for a civil offense, he is detained with and subject to the same rules as those incarcerated for criminal offenses.

39. Ramirez cannot move freely, eat the food that he wants, sleep in his own bed, or spend time with his loved ones. He has very little privacy. He will be resigned to eat jailhouse turkey this Thanksgiving. His next immigration hearing date is December 11, 2025, with a final hearing most likely months away.

40. The private interest here is fundamental: freedom from detention. It weighs heavily in the weighing of the *Mathews* factors.

### *Risk of Erroneous Deprivation*

41. Similarly, the risk of erroneous deprivation of Ramirez's liberty is substantial. This instant issue has been decided at least 324 times across the country since the BIA's ruling in *Matter of Yajure Hurtado*. Courts have overwhelmingly sided with similarly situated petitioners such as Ramirez.

42. Moreover, the US District Court for the Central District of California certified nationwide class membership for a "Bond Eligible Class" that encompasses: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *See,* Order Granting Class Certification.

43. The same court further issued an order rejecting *Matter of Yajure Hurtado* and the predecessor ICE policy of applying 235(b)(2)(A) detention without bond to all persons who entered without admission or inspection. *See,* Order Granting Petitioner's Motion for Partial Summary Judgment and Denying Request to Enter Final Judgment. The class certification order expressly states "When considering this determination with the MSJ Order, the Court extends the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole." *See,* Order Granting Class Certification at 14.

44. The Government's ability to detain noncitizen during removal proceedings is found in the Immigration and Nationality Act, Title 8 U.S.C. §1221 et seq.:

   a. Discretionary Detention, 8 U.S.C. § 1226(a) generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings, and permits those noncitizens who are not subject to

        mandatory detention to be released on bond or on their own recognizance;

   b. Mandatory Detention of "Criminal" Noncitizens. 8 U.S.C. § 1226(c) generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

   c. Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b) generally requires detention for certain noncitizen applicants for admission, such as those noncitizens arriving in the U.S. at a port of entry or other noncitizens who have not been admitted or paroled into the U.S. and are apprehended soon after crossing the border.

   d. Detention Following Completion of Removal Proceedings. 8 U.S.C. § 1231(a) generally requires the detention of certain noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. Id. at § 1231(a)(2),(6).

45.    Mr. Ramirez's case concerns the detention provisions at §§ 1226(a) and 1225(b). Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

46. Following enactment of the IIRIRA, the Executive Office for Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination") (emphasis added).

47. For nearly thirty years, ICE and EOIR practice was that most noncitizens apprehended in the interior of the United States after they had been living in the U.S. for more than two years (as opposed to "arriving" at a point of entry, border crossing, or being apprehended near the border and soon after entering without inspection) received a bond hearing. If determined to not be a danger to the community or a flight risk and, as a result, granted a change in custody status, the individuals were released from detention either on their own recognizance or after paying the bond amount set by the IJ in full. 8 U.S.C. § 1226(a)(2)(A).

48. Recently, ICE has—without warning nor any publicly-stated rationale—reversed course and adopted a policy of attempting to treat all individual noncitizens that were not previously admitted to the U.S. that are contacted in the interior of the

U.S. at any time after their entry as "arriving" and ineligible for bond regardless of the particularities of their case.

49. The IJ's refusal to hold a bond hearing has no basis in law beyond a BIA case that has overwhelmingly not held water before federal courts.

50. The plain meaning of terms used in §§1225 and 1226 contradict DHS and DOJ's interpretation of the statute. 8 U.S.C. §1225(b)(2)(A) applies to noncitizens who are applicants for admission, defined as an alien "seeking admission." Seeking admission "by its own force implies a coming from outside." *United States ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929).

51. The two statutes of §1225 and §1226 are distinguished in that §1225 principally governs the detention of noncitizens seeking admission into the country, whereas §1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings…" *Jennings* at 838.

52. The IJ's reading would also make large portions of §1226 superfluous. Congress recently amended §1226 with the Laken Riley Act (LRA). That act requires detention of noncitizens charged with certain crimes *and* who entered the United States without inspection. If the Government is correct, then there would have been no point in Congress passing the LRA.

53. Nearly every District Court in this country that has analyzed this issue have found the Government's interpretation of §1225 to be incorrect. *See Aguilar Maldonado v. Olson*, No. 25-CV-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero*, 2025 WL 2403827, at *9; *see also, e.g.*, *Martinez v. Hyde*, No. 25-11613-BEM,

13

2025 WL 2084238 (D. Mass. July 24, 2025); *Vazsquez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *Rosado v. Figueroa*, No. CV-25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025).

### *Government Interest*

54. The government's interest here carries little weight in comparison. There is no discernable harm with either releasing Petitioner Mr. Ramirez or at the very least ordering the IJ to hold a bond redetermination hearing.

### FIRST CAUSE OF ACTION

### Violation of Fifth Amendment – Substantive Due Process

55. Mr. Ramirez realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

56. The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

57. Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Mr. Ramirez has been deprived of his liberty.

58. The government's continued detention of Mr. Ramirez is not supported by any special interest or compelling justification that outweighs his liberty interest.

14

The IJ's refusal to hold a bond redetermination hearing violates his substantive due process rights.

## SECOND CAUSE OF ACTION

### Violation of Fifth Amendment – Procedural Due Process

59. Mr. Ramirez realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

60. Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Mr. Ramirez has not received that opportunity here.

61. Mr. Ramirez's liberty interest and the risk of erroneous deprivation far outweigh the government's interest in continued detention. The IJ's refusal to hold a bond redetermination hearing violates Ramirez's procedural due process rights.

## THIRD CAUSE OF ACTION

### Violation of the Administrative Procedures Act

62. The IJ's decision violates the Administrative Procedures Act, specifically that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; and without observance of procedure required by law.  5 U.S.C. §706(2)(A)-(D).

63. Mr. Ramirez incorporates his previous arguments and paragraphs.

## PRAYER FOR RELIEF

Petitioner Ulises Ramirez Cruz respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order the immediate release of Petitioner pending these proceedings, pursuant the Court's inherent power;

(3) If Petitioner is not immediately released, order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

(4) Declare that Petitioner's detention violates the Fifth Amendment;

(5) Declare that Petitioner's detention violates the Administrative Procedures Act;

(6) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days, or in the alternative, to order Respondents to give Petitioner a bond redetermination hearing;

(7) Declare that Respondents are required to afford Petitioner the full benefit of the classwide ruling, findings, and order for partial summary judgment entered in *Lazaro Maldonado Bauutista, et al. v. Ernesto Santacruz Jr.*, et al. 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 25, 2025) at Dkt. No. 41, 42, and that failure to do so renders his custody unlawful;

(8) Enjoin Respondents from applying to Petitioner any policy, procedure, or practice that the Class Action court has adjudged unconstitutional or unlawful;

(9) Award Petitioner reasonable attorneys' fees and costs; and

(10)   Grant any further relief the Court deems just and proper.

Dated this 1st day of December, 2025.

/s/ Christopher J. Roth
Christopher J. Roth
Roth Weinstein, LLC
713 S. 16th St.
Omaha, NE 68102
Office: (402) 346-0720
Fax: (402) 615-6223
Roth@RothWeinstein.com
