IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ULISES RAMIREZ CRUZ,<br><br>        Plaintiff-Petitioner,<br><br>vs.<br><br>KEVIN J. SCHNEIDER, Polk County Sheriff; PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; DONALD J. TRUMP, President of the United States, in their official capacities,<br><br>        Defendants-Respondents. | Case No. 4:25-cv-00478-SHL-SBJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION** |

**I.     INTRODUCTION.**

Federal officials have initiated removal proceedings against Petitioner Ulises Ramirez Cruz, a citizen of Mexico who has been in the United States for approximately five years. Pending completion of the removal proceedings, Petitioner has been detained without a bond hearing. He argues that this violates his statutory and due process rights and thus asks for a preliminary injunction either (a) requiring federal officials to give him a bond hearing within seven days, or (b) ordering him released outright. (ECF 3.)

For reasons set forth below, the Court concludes that Petitioner is entitled to a bond hearing. The Court will not, however, order him released outright, as it is for an Immigration Judge to decide the issue of release or detention in the first instance. The Court therefore GRANTS IN PART and DENIES IN PART his Motion for Preliminary Injunction.

**II.    FINDINGS OF FACT.**

The material facts are not in dispute. Petitioner is a citizen of Mexico who is now in the United States. (ECF 8-1, ¶¶ 4–5.) The Government alleges that he does not have valid legal status in the United States. (ECF 8-1, pp. 4–5.) On November 7, 2025, he was arrested by federal

1

immigration officials and issued a Notice to Appear in removal proceedings. (Id., p. 2, ¶ 6.) He has been detained at the Polk County Jail in Des Moines, Iowa, since being arrested. (Id.) On November 20, 2025, an Immigration Judge issued an order denying Petitioner's request for bond. (Id.) The basis for the Immigration Judge's decision was that the judge did not have jurisdiction to order Petitioner released on bond. (Id., p. 13.) The Immigration Judge cited section 235(b)(2)(A) of the Immigration and Naturalization Act ("INA"), which is codified at 8 U.S.C. § 1225(b)(2)(A). (Id.) Petitioner's next immigration hearing is scheduled for December 11, 2025. (Id., p. 2, ¶ 6.)

## III.   PRELIMINARY INJUNCTION STANDARDS.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "[T]he burden of establishing the propriety of an injunction is on the movant." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The Court must consider four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (alteration in original) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "While 'no single factor is determinative,' the probability of success factor is the most significant." *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020) (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)).

As to the remaining three factors, a plaintiff "is not required to prove with certainty the threat of irreparable harm, but it must prove that 'irreparable injury is likely in the absence of an injunction.'" *Sleep No. Corp.*, 33 F.4th at 1018 (quoting *Winter*, 555 U.S. at 22). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "In balancing the equities, [the Court] weigh[s] 'the threat of irreparable harm' shown by the movant against 'the injury that granting the injunction will inflict on other parties litigant.'" *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (quoting *Dataphase Sys.*, 640 F.2d at 113.) This "requires a court to distinguish between 'weak or illusory injuries' and 'very real threats' of injuries." *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 798 (S.D. Iowa 2022) (cleaned up) (quoting *Sak v. City of Aurelia*, 832 F. Supp. 2d 1026,

1046 (N.D. Iowa 2011)). It considers harm to both the litigants and other interested parties, like the public. *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1047 (N.D. Iowa 2008). The last factor, the public interest, "invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious." *Id*. at 1048.

## IV. LEGAL ANALYSIS.

### A. The Court Has Jurisdiction to Review Petitioner's Claims.

The Federal Defendants[1] argue, as a threshold matter, that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and (b)(9) to review Petitioner's claims. Section 1252(g) states, subject to certain exceptions, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This jurisdiction-stripping provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision." *Id.* Similarly, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process.

Federal officials have raised this argument in recent months in cases similar to this one. The argument has been repeatedly rejected. *See, e.g.*, *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–47 (D. Minn. 2025); *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703–06 (D. Minn. 2025). This Court itself has rejected it three times. *See Barrajas v. Noem*, No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *2–3 (S.D. Iowa Sept. 23, 2025); *Helbrum v. Williams Olson*, 4:25-cv-

---

[1] The "Federal Defendants" consist of every Defendant except Polk County Sheriff Kevin J. Schneider.

00349-SHL-SBJ, 2025 WL 2840273, at *3 (S.D. Iowa Sept. 30, 2025); *Enriquez Reyes v. Noem*, No. 3:25-cv-00114, ECF No. 14 (S.D. Iowa Nov. 3, 2025). The Court stands by its prior analysis, which revolves around two things.

First, the United States Supreme Court has interpreted the jurisdiction-stripping provision of § 1252(g) narrowly to cover only the three "discrete acts" of commencing proceedings, adjudicating cases, and executing removal orders. *See Maldonado*, 795 F. Supp. 3d at 1144–45 (discussing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) and *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)). A request for a bond hearing is not one of those three acts, but rather is "independent of, and collateral to, the removal process." *Hasan*, 2025 WL 2682255, at *4 (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

Second, and similarly, the Supreme Court has squarely held that § 1252(b)(9) does not deprive federal courts of jurisdiction over cases challenging whether or when bond hearings are required in removal proceedings. *See Jennings*, 583 U.S. at 292–95; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that § 1252(b)(9) did not prohibit judicial review of claims against federal officials for detaining aliens without bond). Holding otherwise would run the risk of "mak[ing] claims of prolonged detention [in removal proceedings] effectively unreviewable." *Jennings*, 583 U.S. at 293.

To the extent the Federal Defendants are arguing that jurisdiction does not exist because Petitioner failed to exhaust administrative remedies, the Court rejects the argument. Absent a writ of habeas corpus, Petitioner's only avenue of appeal would be to the BIA, which recently held that aliens like Petitioner who are in removal proceedings are subject to mandatory detention under § 1225 irrespective of the proper interpretation of § 1226(c)(1)(E)(ii). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 229. An appeal therefore would have no chance of changing Petitioner's release status, but rather would simply delay resolution of his habeas petition. Exhaustion is not required in these circumstances. *See Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *4–5 (E.D. Mich. Aug. 29, 2025) (declining to require exhaustion in similar circumstances).

For these reasons, the Court has jurisdiction over Petitioner's claims.

B.  *Petitioner Is Likely to Succeed on the Merits.*

On the merits, the crucial question is whether Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225. Section 1225(a)(1) defines "applicant for

admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 287–88 (quoting 8 U.S.C. § 1182). The Federal Defendants argue that Petitioner is an "applicant for admission" under § 1225 and therefore is not entitled to an immigration bond hearing. (ECF 8, p. 8.)

The threshold problem with the Federal Defendants' position is that it treats every person who enters the country without legal status as an "applicant for admission." *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4–5; *Hasan*, 2025 WL 2682255, at *5–9; *Romero v. Hyde*, 795 F. Supp. 3d 271, 281–88 (D. Mass. 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.*; 8 U.S.C. § 1226(a). It is especially difficult to square the Federal Defendants' interpretation of § 1225(b)(2)(A) with Congress's decision earlier this year to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See Hasan*, 2025 WL 2682255, at *8; *Romero*, 795 F. Supp. 3d at 286–87. Under the Federal Defendants' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless because the persons subject to mandatory detention under the Laken Riley Act would have been subject to mandatory detention upon entering the country in the first place. This is not how statutes are to be interpreted, as "one of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void, or insignificant.'" *Hasan*, 2025 WL 2682255, at *8 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Petitioner's likelihood of success on this issue is illustrated by the fact that most district courts have rejected the Government's position. *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 2025 WL 2682255, at *5–9; *Maldonado*, 795 F. Supp. 3d at 1150–53; *Romero*, 795 F. Supp. 3d at 281–88,. At most, the Government cites two cases that have come out differently. *See Vargas Lopez v. Trump*, --- F. Supp. 3d ----, 2025 WL 2780351, at *7–10 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, --- F. Supp. 3d ----, 2025 WL 2730228, at *4–5

(S.D. Cal. Sept. 24, 2025). The weight of authority, however, remains strongly on Petitioner's side. *See Barrajas*, 2025 WL 2717650, at *4 ("The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings."). This Court will continue to follow the weight of authority.

    *C. The Remaining <u>Dataphase</u> Factors Weigh in Favor of Injunctive Relief.*

Because the likelihood of success factor is the most important to determining whether to award injunctive relief, *see Carson*, 978 F.3d at 1059, the Court's analysis of the merits goes a long way toward making such relief appropriate. Nonetheless, the Court also will analyze the other three *Dataphase* factors: threat of irreparable harm, balance of harms, and public interest. *See Sleep No. Corp.*, 33 F.4th at 1016 (listing factors).

As to irreparable harm, Petitioner alleges that has lived in the United States for approximately five years. There is no record of any criminal history or other dangerous or threatening conduct. It is plausible in these circumstances that Petitioner will be granted release if given an individualized hearing. By depriving him of such a hearing, the Federal Defendants are ensuring that he will remain in custody. His loss of liberty is a paradigmatic example irreparable harm. *See Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (describing loss of liberty as "perhaps the best example of irreparable harm"). Moreover, even if Petitioner ends up not being released on bond, the denial of his due process right to a hearing is also a form of irreparable harm. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025). Accordingly, this factor weighs in favor of injunctive relief.

The remaining factors, balance of harms and public interest, "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023). Here, they weigh in favor of injunctive relief. As noted above, the Court would not be ordering any particular outcome on bond or detention. Rather, Petitioner simply would be entitled to his statutory right to a hearing. This means the Immigration Judge will have the authority—as Immigration Judges have for years—to evaluate Petitioner's history and circumstances and make an individualized decision. If public safety or some other appropriate factor warrants detention, Petitioner will remain in custody. If not, he will be released on bond. Either way, there is no meaningful "harm" to the Government from giving Petitioner an individualized hearing. *See Hasan*, 2025 WL 2682255, at *12 (holding that the Government's interests were adequately protected by, *inter alia*, "the individualized

determination of an [Immigration Judge] as to whether an individual should be released on bond under § 1226(a)"). To the contrary, "there is an extremely compelling public interest in *protecting* the fundamental principles of due process." *Id.* at *13 (emphasis added).

In sum, the *Dataphase* factors weigh in favor of injunctive relief in the form of ordering the Federal Defendants to provide Petitioner with a bond hearing. The Court will not, however, grant Petitioner's request to be immediately released, as the issue of release or detention is more appropriately addressed by an Immigration Judge in the first instance.

### D.  The Status of the Class Action in the Central District of California Is Immaterial.

In *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), United States District Judge Sunshine S. Sykes of the Central District of California granted partial summary judgment in favor of four plaintiffs who sought declaratory relief establishing that the United States was required to provide individualized bond hearings in removal proceedings. A few days later, Judge Sykes certified a class of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time of the Department of Homeland Security makes an initial custody determination." *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). Petitioner argues that he is a member of this class. The Government does not necessarily disagree, although it argues that the declaratory relief awarded by Judge Sykes might not be final and binding. (ECF 8, p. 5.) *See also Hernandez v. Noem*, No. 2:25-cv-023404, 2025 WL 3470903, at *4 (D. Nev. Dec. 3, 2025).

If the relief ordered in *Bautista* is final and binding, Petitioner is entitled to an individualized bond hearing by virtue of being part of the class. If the relief ordered in *Bautista* is not final and binding, Petitioner is entitled to an individualized bond hearing by virtue of this Court's ruling. Either way, the outcome is the same, and thus the status of the class action in the Central District of California is immaterial.

## V.   CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART Petitioner's Motion for Preliminary Injunction. (ECF 3.) The Federal Defendants shall provide Petitioner with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven calendar days of this Order. Petitioner will not be required to provide security for the injunction, as there is no risk of costs or

7

damages to the Federal Defendants. Because the Court is not ordering Petitioner released, Defendant Kevin J. Schneider is not obligated to take any action beyond whatever he ordinarily would do to cooperate with federal officials to ensure Petitioner's appearance at the bond hearing and comply with the outcome of that hearing.

**IT IS SO ORDERED.**

Dated: December 8, 2025

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE